Steven L. Rinehart (USB #11494)
**WESTERN IP**
2912 W. Executive Parkway, Ste. 240
Lehi, UT 84043
Telephone: (888) 941-9933
Email: steve@utahpatentattorneys.com
*Attorney for Plaintiff*

John Swallow (USB #05802)
**SWALLOW LAW OFFICE**
1263 E. Bell View Circle
Sandy, UT 84094
Telephone: (801) 949-9450
Email: johnswallowlaw@gmail.com
*Attorney for Plaintiff*

**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF UTAH, CENTRAL DIVISION**

| | |
|---|---|
| UNIVERA BRANDS, LLC, a Delaware limited liability company,<br><br>Plaintiff,<br><br>v.<br><br>HAWK SPORTS INDUSTRIES, GERMANY, GmbH, a German limited liability company; and ALI RAZA, an individual,<br><br>Defendants. | Case No. 2:26-cv-903<br><br>**COMPLAINT**<br>**JURY TRIAL DEMANDED** |

COMES NOW Plaintiff Univera Brands, LLC ("Univera" or "Plaintiff"), by and through counsel undersigned, and for causes of action against Defendants Hawk Sports Industries, Germany, GmbH and Ali Raza hereby alleges and claims as follows:

**PARTIES, JURISDICTION AND VENUE**

1. Plaintiff Univera Brands, LLC is a limited liability company organized under the laws of the State of Delaware, with its principal place of business at 333 S 520 W, Ste. 250, Lindon, Utah 84042. Univera is an affiliate of Epic Global Inc.

2. Defendant Hawk Sports Industries, Germany, GmbH ("HSI") is an entity organized under the laws of the Federal Republic of Germany, with a place of business at Johann Fleck Straße 6, 24118 Kiel, Germany. HSI is named herein as it identifies itself in its filings with the United States Patent and Trademark Office and as it was captioned in Opposition No. 91267979, in which it appeared through counsel. HSI also does business as Hawk Sports.

3. In its United States Patent and Trademark Office filings, HSI states its legal entity type to be a "gmbh & co. kg" while identifying itself by a name ending in "GmbH." A GmbH and a GmbH & Co. KG are distinct forms of organization under German law. Plaintiff names HSI as HSI names itself, and pleads in the alternative that HSI is organized as a GmbH & Co. KG.

4. Upon information and belief, Defendant Ali Raza is an individual residing in the Federal Republic of Germany, and is the Chief Executive Officer of HSI. Raza personally directed, authorized, participated in, and benefited from the conduct alleged herein, and personally submitted testimony on HSI's behalf in the prior proceeding described below.

5. This action arises under the Trademark Act of 1946, 15 U.S.C. § 1051 *et seq.* (the "Lanham Act"), and under the Declaratory Judgment Act, 28 U.S.C. §§ 2201 and 2202. This Court has subject matter jurisdiction pursuant to 28 U.S.C. §§ 1331, 1338(a) and (b), and 15 U.S.C. § 1121. This Court has supplemental jurisdiction over Plaintiff's state law claims pursuant to 28 U.S.C. § 1367(a) because those claims form part of the same case or controversy. This Court further has jurisdiction under 28 U.S.C. § 1332(a)(2), as this is an action between a citizen of a State and citizens of a foreign state, and the amount in controversy exceeds $75,000 exclusive of interest and costs.

6. This Court has personal jurisdiction over Defendants because Defendants have committed intentional tortious acts expressly aimed at the State of Utah, knowing that the brunt of the harm would be suffered by Plaintiff in Utah, where Plaintiff maintains its principal place of business. *See Calder v. Jones*, 465 U.S. 783, 789–90 (1984); *Dudnikov v. Chase Manhattan Corp.*, 514 F.3d 1063, 1072–77 (10th Cir. 2008) (personal jurisdiction proper in forum where defendant sent notice of claimed infringement to an online marketplace intending to halt a forum resident's sales). Defendants transact business within Utah, have purposefully directed sales and marketing activity into Utah and the United States, and have twice caused a third-party marketplace to suspend Plaintiff's commercial activity in Utah. Jurisdiction also exists pursuant to Utah Code Ann. § 78B-3-205.

7. In the alternative, and to the extent Defendants are not subject to the jurisdiction of the courts of general jurisdiction of any State, this Court has personal jurisdiction over Defendants pursuant to Fed. R. Civ. P. 4(k)(2), because Plaintiff's claims arise under federal law and the exercise of jurisdiction is consistent with the United States Constitution and laws given Defendants' sustained contacts with the United States as a whole, including their sales into the United States, their prosecution of United States trademark applications, their appearance and full trial participation before the United States Patent and Trademark Office, and their repeated submissions to a United States online marketplace.

8. Venue is proper in this district under 28 U.S.C. § 1391(b)(2) because a substantial part of the events giving rise to these claims occurred in this district and the harm was suffered

here, and under 28 U.S.C. § 1391(c)(3), because Defendants are not resident in the United States and may be sued in any judicial district.

## GENERAL ALLEGATIONS

### Introduction

9. This case is not a dispute about who owns the HAWK SPORTS trademark. Defendants' claim to prior rights in the HAWK name in the United States was decided against them after a full trial on the merits before the Trademark Trial and Appeal Board. This case is about what Defendants did after they lost: they represented to Amazon.com that they held rights under Plaintiff's own federal trademark registration, and used those false representations to seize control of twelve of Plaintiff's product listings.

10. Plaintiff Univera is the owner of United States Trademark Registration No. 7,998,692 for the standard character mark HAWK SPORTS in International Class 28. Defendants own no United States trademark rights in HAWK or HAWK SPORTS. In 2024, after a full trial, the Trademark Trial and Appeal Board sustained an opposition brought by Plaintiff's predecessor in interest and refused registration of Defendants' competing HAWK mark, expressly finding that Defendants had failed to prove prior use in the United States and that the testimony of Defendant Raza on that subject was unconvincing.

11. Rather than accept that outcome, Defendants have twice weaponized Amazon's intellectual property enforcement systems against Plaintiff and its predecessors. The first time, in March 2025, Defendants used a registration the United States Patent and Trademark Office had issued to them by clerical error -- and which the Office had

already announced would be cancelled -- to cause the removal of Plaintiff's predecessor's listings.

12. The second time is the subject of this action. Defendants enrolled twelve of Plaintiff's ASINs identified in Paragraph 92 hereof (the "Affected ASINs") in Amazon's Transparency Program. Defendants did not assert a trademark against Plaintiff's listings. They took the listings. As a result, Plaintiff is now barred from its own shelf space.

13. The Transparency Program permits the party holding brand owner status for a given brand and its associated ASINs to require that every unit sold under those ASINs bear a unique Transparency code issued by that party. The practical consequence of enrollment by a stranger to the brand is that the true owner cannot place its own goods into the Amazon marketplace at all without the enrolling party's permission. The mechanics of the program are central to this action, and are as follows.

14. The Transparency Program operates upon ASINs. An ASIN, or Amazon Standard Identification Number, is the unique identifier Amazon assigns to a single product listing. The ASIN is the listing: the product detail page, the photographs and copy that appear on it, the customer reviews and ratings accumulated against it, the Best Seller Rank it has earned, and the offers that sellers make through it. An ASIN is created by the seller who first lists the product, and it carries the commercial history of that product on the platform.

15. Enrollment of an ASIN in the Transparency Program is performed listing by listing, and no ASIN is enrolled except by the act of the enrolling party. No ASIN becomes enrolled because it bears a particular word, because it is associated with a particular mark, or because a party has asserted rights in a mark. The enrolling party must identify each

individual ASIN it intends to enroll, affirmatively select that ASIN, and order, and incur a per-code fee for, the Transparency codes without which no unit may thereafter be sold against it. Nothing is enrolled that the enrolling party does not itself select.

16. Upon information and belief, the enrollment interface displays to the enrolling party, for each ASIN presented for selection, the product image, the listing title, and the brand as those appear to consumers on the Amazon marketplace, such that a party selecting an ASIN sees the listing it is selecting at the moment it selects it.

17. Enrollment confers no trademark right, resolves no trademark question, and adjudicates nothing. What enrollment confers is control of a specific listing: the power to decide who may make an offer against that ASIN, and on what terms. Upon information and belief, at no point in the enrollment process does Amazon ask the enrolling party whether it created the ASIN, whether it has ever sold a unit against the ASIN, or whether another seller is presently selling against it. Amazon relies instead upon the enrolling party's representations, which are set out in Paragraphs 105 through 108 below.

18. Where the enrolling party uses Amazon-issued Transparency codes, the program further requires it to demonstrate physical control of the goods it purports to protect by completing an Operational Performance Review, in which units bearing Transparency codes must be physically labeled, shipped into Amazon's fulfillment network, and scanned. Amazon's published Transparency Onboarding Guidelines (Global Version 3, updated June 2021) describe the goal of that review as ensuring "that the signal we receive from your products scan is strong enough to identify counterfeit definitively." Amazon states that Transparency protections do not become active until a product passes that review. Upon information and belief, Defendants were required to submit at least ten

product samples to Amazon in connection with the enrollment of each of the Affected ASINs.

19. The program is built upon the premise that the enrolling party manufactures, or otherwise physically controls, the goods sold under the ASINs it enrolls. That premise is what makes the program workable: a manufacturer applies a unique code to each unit as that unit is produced. A party that does not make the goods, and does not possess them, has nothing to label and nothing to submit.

20. Amazon's Brand Registry accepts either a registered trademark or a pending trademark application as sufficient to confer "Rights Owner" status upon an applicant. Enrollment in the Transparency Program, however, requires that the brand be enrolled in Brand Registry "with a government-registered trademark," in the words of Amazon's published Transparency enrollment requirements, which further require the enrolling party to be able to apply a Transparency code "on every unit you manufacture." Brand Registry permits trademarks registered in different countries to be associated with a single brand record.

21. Defendants obtained Rights Owner status for a Brand Registry brand designated "Hawk Sports" on the strength of Application Serial No. 88808929, an unregistered United States application that has never matured into a registration.

22. Amazon has acknowledged this in writing. In a message dated September 5, 2026 in Case No. 21678702291, Amazon Brand Registry Support stated that its prior responses had wrongly directed Plaintiff to the administrator of a separate Brand Registry brand "associated with a pending, never-registered US trademark (Serial No. 88808929)" rather than to Plaintiff's own entry, which Amazon identified as tied to Registration

No. 7,998,692 / Serial No. 88380071. Amazon further escalated the matter as a formal brand ownership dispute.

23. HSI is the registered proprietor in the United Kingdom of Registration No. UK00914592943, a figurative mark bearing the text HAWK SPORTS, registered in Classes 28 and 41, with a filing date of September 25, 2015. Upon information and belief, that registration consists of the same stylized HAWK and hawk-head design that was the subject of Application Serial No. 88349081, which the Board refused to register in the United States.

24. Because a pending application does not satisfy the Transparency Program's registered-trademark requirement, Defendants could not have enrolled the Affected ASINs on the strength of Serial No. 88808929 alone. Upon information and belief, Defendants associated with that same Brand Registry brand record a trademark registered outside the United States, namely United Kingdom Registration No. UK00914592943 or another foreign registration, used that foreign registration to satisfy the registered-trademark requirement and gain access to the Transparency enrollment portal, and there selected and enrolled the Affected ASINs.

25. A trademark registration issued by the United Kingdom or by any other foreign trademark office confers no right to use a mark in the United States and no right to exclude others from doing so. Defendants hold no United States trademark registration of any kind.

26. Defendants have never been authorized by Plaintiff or any of its predecessors to act under Serial No. 88380071, Registration No. 7,998,692, or the HAWK SPORTS brand on the Amazon marketplace.

27. Enrollment in the Transparency Program cannot occur by accident, and cannot occur by reason of any mistake or confusion about trademark ownership. It requires the enrolling party to take a series of separate and affirmative steps: first, to enroll a brand in the program; second, to accept the Transparency Program Agreement, which contains the representations described in Paragraphs 105 through 108 below; third, to individually identify and select each ASIN to be enrolled; fourth, to order, and incur a per-code fee for, the Transparency codes that thereafter govern every unit sold against those ASINs; and, where Amazon-issued codes are used, fifth, to satisfy Amazon's product verification requirements described in Paragraph 18 above, by physically labeling units, shipping them into Amazon's fulfillment network, and having them scanned there. Defendants took those steps, and in the third of them selected each of the twelve Affected ASINs. Each of the representations Defendants made in accepting the Transparency Program Agreement was false.

28. Where it is required, the fifth step is the one that cannot be taken on paper. Every other step in the process is a form, a selection, or an order. The verification step requires the enrolling party to put its hands on the goods.

29. There is no step in the enrollment process at which a party asserts a trademark against another party's listing, and no step at which Amazon weighs competing claims to a mark. Amazon provides a different and separate mechanism for a party that believes another seller is infringing its mark: the intellectual property infringement complaint process. Defendants know that process. They used it against Plaintiff's predecessor in March 2025, as alleged in Paragraphs 87 through 89 below, and their claims were investigated and refuted.

30. Defendants did not use that process here. Had Defendants believed in good faith that Plaintiff's listings infringed a mark Defendants owned, the course open to them was to say so to Amazon and submit the claim to be tested, as they had done before and lost. Defendants instead used a program that tests no claim, names no adversary, and affords the adverse party no notice and no opportunity to respond, and by that route took control of the listings outright.

31. Defendants enrolled no listing of their own. Upon information and belief, Defendants have no ASIN of their own on the Amazon United States marketplace to enroll. Every ASIN Defendants selected was Plaintiff's.

32. Nor do Defendants manufacture the goods sold under the Affected ASINs. Those goods are manufactured to Plaintiff's specification, packaged for Plaintiff, and sold by Plaintiff. Upon information and belief, Defendants have no access to those goods in the ordinary course of their business.

33. Upon information and belief, Defendants nonetheless satisfied Amazon's product verification requirements as to the Affected ASINs. Plaintiff is presently unable to state which of the available means Defendants employed, that information residing in the knowledge of Defendants and of Amazon, and Plaintiff pleads in the alternative that Defendants either (i) acquired units of Plaintiff's genuine goods, whether by purchase through the Amazon marketplace or otherwise, applied or caused to be applied Transparency codes to those units, and submitted those units or images of them to Amazon as goods of Defendants' own manufacture; (ii) submitted units or images of Defendants' own HAWK-branded goods and represented them to Amazon as the goods sold under the Affected ASINs, which they are not; (iii) represented to Amazon that the

inventory of Plaintiff then resident in Amazon's fulfillment centers was Defendants' own; or (iv) connected existing serial codes to the program in a manner that did not require physical verification, while representing to Amazon that they were the source of the goods sold under the Affected ASINs.

34. Each of those alternatives carried with it an affirmative representation to Amazon that Defendants were the source of goods Defendants have never made, and each of the first three required a deliberate physical act undertaken at Defendants' own expense. If Defendants acquired Plaintiff's goods in order to make that representation, they purchased from the very seller they then excluded, and the records of that purchase are within the possession of Amazon and of Defendants and are discoverable in this action.

35. Defendants selected for enrollment twelve ASINs against which they have no sales history whatsoever, and which correspond to products that Plaintiff and its predecessors have manufactured and sold under the HAWK SPORTS and HAWK marks since 2016. Each of the Affected ASINs was created by Plaintiff's predecessor's seller account between 2018 and 2020, is stocked with Plaintiff's goods, and displays Plaintiff's own product photographs, titles, and descriptions, together with the customer ratings Plaintiff's goods have earned, which number approximately 22,500 across the Affected ASINs when ratings Amazon shares among variations of the same product are counted once. Plaintiff and its predecessors have sold under those listings continuously from the creation of each listing to the present. Defendants selected each of those twelve listings individually.

36. The selection of the Affected ASINs was therefore not the assertion of a claim to a mark. It was the identification of twelve of a competitor's established listings and the appropriation of control over each of them.

37. To the extent Defendants contend that the Affected ASINs were presented to them within an Amazon Brand Registry catalog by reason of the brand name appearing on Plaintiff's own listings, that circumstance aggravates rather than excuses the conduct. The listings so presented were Plaintiff's. They bore Plaintiff's photographs, Plaintiff's copy, and Plaintiff's ratings, and they reflected a sales history to which Defendants could lay no claim. Defendants saw those listings for what they were, and selected them anyway.

38. The effect of the enrollment is that Plaintiff cannot ship its own goods, bearing its own registered mark, into the Amazon marketplace without obtaining Transparency codes from Defendants, a party with no rights whatsoever in the mark and no connection of any kind to the listings.

39. Plaintiff's units that were already within Amazon's fulfillment centers when Defendants initiated the enrollment bear no Transparency codes, because Plaintiff has never been enrolled in the Transparency Program and has never had access to codes. Amazon has continued to sell those units, but it has also restricted units of the products named in its notifications of September 2, September 4, and September 8, 2026 and directed Plaintiff to remove them.

40. Plaintiff cannot place new inventory into Amazon's fulfillment network under the Affected ASINs. Amazon rejects the units at the fulfillment center for want of a Transparency code, and only Defendants can issue those codes.

41. Plaintiff maintains merchant-fulfilled offers on certain of the Affected ASINs, which it ships from its own warehouse. That channel is not a substitute for fulfillment by Amazon. When an ASIN's inventory in Amazon's fulfillment network is exhausted, the listing loses its Prime badge and its fulfilled-by-Amazon offer and is left with the merchant-fulfilled fallback alone, at a materially longer delivery estimate and a lower rate of conversion. That fallback is itself subject to the Transparency code requirement, because Amazon requires a Transparency code for every unit of an enrolled product that a seller fulfills itself.

42. As a direct result, Amazon has rejected Plaintiff's inbound units in three weeks documented since mid-August 2026, totaling 829 units, of which 804 units are units of the Affected ASINs and 25 units are units of B07KL667P3, which Plaintiff excludes from the figures stated in this Complaint. Each rejection is recorded in Amazon's own weekly Seller Performance notifications or in Plaintiff's August 27, 2026 submission in Case No. 21678702291.

43. Plaintiff's inbound shipment FBA19M8R3VWH, tendered August 19, 2026 and checked in at Amazon's HIA1 facility on August 21, 2026, remains in Receiving status. Of 1,388 units tendered, Amazon released 32 for sale. The remaining 1,356 units are unreceived and cannot be sold. Of those, 892 units across seven of the Affected ASINs, worth approximately $17,940 at current retail prices, are held by reason of the Transparency enrollment.

44. The risk of destruction is not hypothetical. Amazon's Seller Performance notifications dated September 2, September 4, and September 8, 2026 restrict Plaintiff's inventory, state that as of August 5, 2026 every unit of the named products must carry a

Transparency Code, direct Plaintiff to create removal orders, and warn that if Plaintiff does not do so Amazon "may dispose of or return" the restricted units. Plaintiff has asked Amazon in writing not to dispose of any quarantined units while the dispute is open. Amazon has acknowledged the request but has not confirmed any such hold in writing.

45. Plaintiff's remaining saleable inventory is finite and is being depleted daily. Five of the twelve Affected ASINs -- B088SR97T6, B07PVBRZS1, B07QL13QP9, B07PWMKMX1 and B087FJ8BNV -- have no inventory available in Amazon's fulfillment network. Two of them stood at zero on September 11, 2026, and three more reached zero by September 21, 2026. The remainder will follow as the existing units sell through, because Plaintiff cannot replenish any of them. The Affected ASINs include kids' boxing gloves and karate gi, which are gift-season goods; Plaintiff's peak selling period is October through December.

46. When the existing inventory for a given ASIN is exhausted, Plaintiff loses the fulfilled-by-Amazon offer and the Prime badge on its own listing and is left with the merchant-fulfilled fallback alone, which is itself subject to Defendants' codes. Defendants' enrollment thus operates as a delayed and automatic shutdown of Plaintiff's business on the Amazon marketplace, triggered by the ordinary course of Plaintiff's own sales. Defendants need do nothing further. The harm compounds on its own.

47. The resulting harm is not principally monetary. Each of the Affected ASINs carries a Best Seller Rank, a measure of sales velocity that governs the product's visibility and placement on the platform. Best Seller Rank in competitive categories takes years to build. It is calculated from trailing sales, so it declines as the sales that built it roll out of the calculation following a stockout, and it is not restored to its prior position when the

listing returns, because it can be rebuilt only through renewed sales. Plaintiff has accumulated approximately 22,500 customer ratings across the Affected ASINs, counting once the ratings Amazon shares among variations of the same product, together with customer relationships that will migrate to competitors when Plaintiff's goods become unavailable.

48. Over the thirty days ending September 11, 2026, the new-condition SKUs for the twelve Affected ASINs sold 911 units and $19,537.89, which is approximately 30.4 units and approximately $651 per day, or approximately $19,500 per thirty days of forward revenue exposure. Separately, approximately $17,940 of Plaintiff's goods at retail sit unreceived, and Plaintiff presently holds approximately $52,195 of HAWK SPORTS inventory at retail in "sent to FBA, not received" status account-wide. Plaintiff also continues to incur storage, removal, relabeling, and third-party logistics costs, and to spend on paid search directed to listings that cannot convert. All figures in this paragraph are approximations based upon Plaintiff's present knowledge and records.

49. Transparency enrollment operates globally, and it does so because it operates upon the ASIN. A single ASIN enrollment applies across every Amazon marketplace in which that ASIN exists -- including the United States, Canada, the United Kingdom, Germany, France, Italy, Spain, Australia, Japan, and India -- and not merely the marketplace in which the enrolling party registered. That global effect is communicated to the enrolling party throughout the enrollment process.

50. Defendants therefore knew, or were plainly informed, that enrolling Plaintiff's ASINs into the international Transparency Program would block Plaintiff in the United States marketplace regardless of where Defendants operate or claim to hold trademark rights.

The territorial limits of a trademark are of no consequence to a program that operates upon a listing identifier. Defendants were told as much, and proceeded.

51. Defendants intentionally enrolled Plaintiff's ASINs into the Transparency Program. Had Defendants wished to use the Transparency Program for the purpose the program exists to serve, protecting a rights holder's own goods against counterfeits, or to use it only in markets where they claim rights, they could have created separate and unique ASINs for their own products and enrolled those. The program permits it. Creating a new ASIN requires no permission from Plaintiff, no adjudication of any trademark, and no interference with any other seller. Defendants did not do so. They enrolled ASINs already created, stocked, and sold by Plaintiff, and by that choice obtained not protection for their own goods but the exclusion of Plaintiff's.

52. The distinction goes directly to Defendants' intent. A party seeking to protect its own brand enrolls its own listings. A party seeking to exclude a competitor enrolls the competitor's. Defendants enrolled only Plaintiff's.

53. Upon information and belief, Defendants timed the enrollment to deprive Plaintiff of inventory in advance of the fourth-quarter and Prime shopping seasons, the most commercially significant period of the Amazon sales year.

54. Amazon's brand protection systems are administered at speed and at scale. They are not adjudicative. When a party presents a facially valid trademark filing, Amazon acts. That design serves legitimate rights holders, but it is susceptible to precisely the abuse alleged here: a party that has lost on the merits before the USPTO can obtain, through a marketplace form, and without ever naming its adversary or stating a claim, the commercial exclusivity a federal tribunal denied it. This is not a case in which

Defendants mistook Plaintiff's listings for their own, or misapprehended the reach of a mark. Upon information and belief, Defendants used a foreign registered trademark as a credential to gain access to the Transparency enrollment portal, and once through the door they selected twelve of Plaintiff's listings, one by one, and blocked them. Doing so required Defendants to identify Plaintiff's listings, to satisfy Amazon that Defendants were the source of goods Defendants have never made, and to pay for the very codes that now bar Plaintiff from its own shelf space. Only this Court can restore the parties to their rightful positions.

**Plaintiff's Ownership of the HAWK SPORTS Mark**

55. On April 10, 2019, Ortid LLC, a Minnesota limited liability company, filed United States Trademark Application Serial No. 88380071 for the standard character mark HAWK SPORTS in International Class 28. The application claimed first use and first use in commerce as of August 15, 2016.

56. Independent of that application, Ortid LLC used the marks HAWK and HAWK SPORTS in United States commerce beginning in 2016 in connection with weightlifting gloves, weightlifting belts, wrist wraps, and boxing gloves, and thereby acquired common law trademark rights in those marks. Those common law rights, and the goodwill symbolized by them, are the subject of the assignments described below and are separate from, and not dependent upon, the record ownership of any particular application.

57. On June 8, 2022, Ortid LLC executed a Company Intellectual Property Assignment Agreement conveying to Profound Hawk LLC all right, title and interest in and to a portfolio of trademark applications and registrations, including Serial No. 88380071, together with all rights of any kind accruing under the foregoing, the goodwill of the

business connected with and symbolized by the marks, and all accrued claims and causes of action relating thereto. A true and correct copy of that agreement, as recorded, is attached hereto as **Exhibit A**.

58. That assignment was recorded with the United States Patent and Trademark Office on December 18, 2025, at Reel 009107, Frame 0829.

59. On October 28, 2025, Serial No. 88380071 matured into United States Trademark Registration No. 7,998,692 for HAWK SPORTS in International Class 28, for hand wraps for sports use; karate gloves; karate shin pads; weightlifting belts; sports equipment for boxing and martial arts, namely, boxing gloves, mixed martial arts gloves, punching mitts, and shin guards; and weight lifting gloves. A true and correct copy of the Registration Certificate is attached hereto as **Exhibit B** (the "'692 Registration," and the mark covered thereby, the "'692 Mark").

60. On March 5, 2026, the assignors identified on Schedule A to an Intellectual Property Assignment Agreement, including Suma Brands Funding I, LLC and Profound Hawk LLC, confirmed the transfer of a portfolio of intellectual property, including the '692 Mark and the '692 Registration, to Ambr Group, LLC, a Delaware limited liability company. The agreement recites that the assets were transferred pursuant to Article 9 of the New York Uniform Commercial Code, effective March 5, 2026, in connection with a Transfer Statement executed under N.Y. U.C.C. § 9-619. A true and correct copy of the executed agreement, together with the assignment cover sheet by which it was recorded, is attached hereto as **Exhibit C**.

61. The agreement conveys, in terms, the assignors' trademarks and the goodwill associated with them, all goodwill of the businesses associated with the transferred property, and all

rights to sue and to recover for past, present, and future claims arising out of infringement of the transferred property. Schedule B to the agreement identifies the ’692 Registration by serial number and registration number, together with Registration Nos. 7,998,693 (HAWK JIU JITSU), 7,998,702 (HAWK, stylized, in International Class 28, Serial No. 88577186), 5,902,198 (HWK MOTORSPORTS APPAREL), 6,002,468 (HWK, stylized), and Application Serial No. 90144475 (HAWK, stylized). **Exhibit C**.

62. Schedule B lists the HAWK marks under the name of Ortid LLC, with a note that the transfer of those marks from Ortid LLC to Profound Hawk LLC had not been recorded with the United States Patent and Trademark Office. That note is superseded by the Office’s records. The June 8, 2022 assignment from Ortid LLC to Profound Hawk LLC was recorded on December 18, 2025 at Reel 009107, Frame 0829, and the Office effected an automatic update of ownership to Profound Hawk LLC on March 18, 2026. **Exhibits A, K**.

63. On March 11, 2026, Ambr Group, LLC, a Delaware limited liability company, changed its name to Univera Brands, LLC by Certificate of Amendment filed with the Delaware Secretary of State. A certified copy of that Certificate of Amendment, together with the assignment cover sheet by which the change of name was recorded with the United States Patent and Trademark Office, is attached hereto as **Exhibit D**.

64. Both the March 5, 2026 assignment and the March 11, 2026 change of name were recorded with the United States Patent and Trademark Office on September 2, 2026, under Assignment ID Nos. 2059387 and 2059482, respectively.

65. Univera is accordingly the owner of the ’692 Registration and the ’692 Mark, and the successor in interest to Ortid LLC and Profound Hawk LLC with respect to the ’692

Mark, the common law rights described above, the goodwill symbolized thereby, and all claims and causes of action accrued with respect thereto.

66. Title to a federally registered trademark passes upon the execution and delivery of an assignment. Recordation with the United States Patent and Trademark Office is a notice provision that protects an assignee against a subsequent purchaser for value without notice; it is not a condition of transfer as between the assignor and the assignee. 15 U.S.C. § 1060(a)(3), (4).

67. Plaintiff discloses that the Office's records presently continue to identify Profound Hawk LLC as the owner of Registration No. 7,998,692. A true and correct copy of the Office's record is attached hereto as **Exhibit K**. The Office's records reflect an automatic update of ownership on March 18, 2026, reflecting the recordation of the June 8, 2022 assignment from Ortid LLC to Profound Hawk LLC, and no further ownership update since.

68. The Office updates ownership automatically only where a recorded assignment conveys from the party shown as the owner of record. The assignment recorded on September 2, 2026 under Assignment ID No. 2059387 identifies two conveying parties, Suma Brands Funding I, LLC and Profound Hawk LLC, and the Office's automated ownership update has not issued in consequence. Plaintiff has prepared a confirmatory assignment, running solely from Profound Hawk LLC, for execution and recordation so that the Office's ownership records may be conformed. Neither the pendency of that ministerial correction nor the state of the Office's automated ownership records affects Plaintiff's title, which passed on execution and delivery of the assignments described above.

69. Each assignment in that chain conveyed the goodwill of the going business associated with the marks and not bare trademark rights. The HAWK SPORTS business, its product lines, supply relationships, customer base, product listings, and Amazon sales channel, has operated continuously and without interruption through each transfer, and Plaintiff and its predecessors have at all times maintained the nature and quality of the goods sold under the marks.

70. Univera and its predecessors have used the HAWK SPORTS and HAWK marks continuously in United States commerce since 2016 and have sold millions of dollars of goods under those marks, the substantial majority through Amazon.com.

**The Prior Adjudication of Defendants' Claimed Rights**

69. In March of 2021, Ortid LLC commenced Opposition No. 91267979 before the Trademark Trial and Appeal Board (the "Board"), captioned *Ortid LLC v. Hawk Sports Industries, Germany, GmbH*, opposing HSI's Application Serial No. 88349081 for a stylized HAWK and design mark in International Class 28.

70. Ortid's notice of opposition was pleaded upon its prior common law use of HAWK in connection with weightlifting gloves, weightlifting belts, and boxing gloves, and upon its ownership of a separate application, Serial No. 90144475, for HAWK in stylized form. Plaintiff does not contend that the Board adjudicated the '692 Registration, which had not then issued. Plaintiff contends, and alleges, that the Board determined the question of relative priority as between Ortid's use of HAWK in the United States and any use of HAWK by Defendants in the United States, and that this determination is binding upon Defendants here.

71. HSI appeared through counsel and litigated the opposition through discovery and trial. Defendant Ali Raza personally submitted a testimony declaration on HSI's behalf, in which he asserted that HSI had sold HAWK-branded products in the United States as early as 2012 through a customer identified as Volleyball1on1.

72. The owner and co-founder of Volleyball1on1 testified in that proceeding that the volleyballs HSI sold to Volleyball1on1 between 2012 and 2018 did not bear the HAWK marks, that the Volleyball1on1 website had never featured any product bearing the HAWK marks, and that no Volleyball1on1 customer or camp attendee ever received a product bearing the HAWK marks.

73. On August 30, 2024, the Board issued its decision sustaining the opposition. The Board found that Ortid had established priority on the basis of its first sale of HAWK-branded boxing gloves in the United States on February 16, 2017, which the Board found to be established by testimony that was "clear, certain, consistent and supported by documentary evidence"; that HSI had not established use of its mark in the United States before that date; and that it gave no weight to Raza's testimony of prior use, which it found unconvincing. In reciting the record, the Board also noted that Ortid first sold HAWK-branded weightlifting gloves in the United States on September 29, 2016. The Board further held that HSI could not rely upon the July 7, 2016 issuance date of the European registration underlying its Section 44(e) claim, and was entitled at earliest to the March 20, 2019 filing date of its application. A true and correct copy of the Board's decision is attached hereto as **Exhibit E**.

74. Whatever date of first use is ultimately established for the goods identified in the '692 Registration, the rights of Plaintiff and its predecessors in the HAWK and HAWK

SPORTS marks in the United States are senior to any use of any HAWK-formative mark that Defendants have ever established, or are able to establish, in the United States.

75. Because the opposition was sustained, HSI's application should have been abandoned. Through a clerical error, the Board instead forwarded the application to issuance, and Registration No. 7,583,256 issued to HSI on December 3, 2024 (the "Inadvertent Registration").

76. On January 17, 2025, the Board issued an order titled "Inadvertently Issued Registration No. 7583256," confirming that the registration had issued in error and referring the matter to the Office of the Commissioner for Trademarks for cancellation. A true and correct copy is attached hereto as **Exhibit F**.[1]

77. On January 21, 2025, the USPTO issued a Note to the File confirming that the Inadvertent Registration would be cancelled and the application restored to pendency for abandonment. A true and correct copy is attached hereto as **Exhibit G**.

78. The Inadvertent Registration was in fact cancelled. United States Patent and Trademark Office records reflect the status of Registration No. 7,583,256 as "Registration cancelled as inadvertently issued," with a status date of April 2, 2025. A true and correct copy of the Office's record is attached hereto as **Exhibit I**.

79. Application Serial No. 88349081 was refused and went abandoned on April 24, 2025.

---

[1] Exhibit F contains an apparent scrivener's error. A footnote to the Board's January 17, 2025 order refers to "application Serial No. 85543973" and to a "May 5, 2013 order," neither of which corresponds to Opposition No. 91267979 or to Application Serial No. 88349081. The reference appears to be uncorrected template language carried over from an unrelated proceeding. The body of the order, the caption, the opposition number, and the registration number identified in the order all correspond to this matter, as does the USPTO's January 21, 2025 Note to the File attached as Exhibit G.

80. Defendants' only live United States trademark filing is Application Serial No. 88808929 for the standard character mark HAWK SPORTS in International Class 28, filed February 25, 2020, ten months after Plaintiff's predecessor filed Serial No. 88380071. A true and correct copy of the Office's record for that application is attached hereto as **Exhibit J**.

81. Serial No. 88808929 was suspended from October 7, 2020 until May 2026, has never matured into a registration, and a non-final Office action issued against it on June 20, 2026. It remains under examination. It is the filing on which Defendants obtained the Brand Registry status described below.

82. Serial No. 88808929 is a use-based application filed under Section 1(a) of the Lanham Act. In it, Defendants claim first use of HAWK SPORTS on June 23, 1998 and first use in commerce on October 5, 2008.

83. Those claimed dates cannot be reconciled with the Board's findings. After a full trial in Opposition No. 91267979, the Board found that Defendants had established no use of a HAWK-formative mark in the United States before February 16, 2017, and gave no weight to the testimony of Defendant Raza on that subject. Defendants nonetheless continue to prosecute Serial No. 88808929 on a claim of use in commerce dating to 2008.

55. On July 25, 2025, less than eleven months after the Board sustained the opposition described above, Abdul Moeed, an individual of Sialkot, Pakistan, filed United States Trademark Application Serial No. 99303642 seeking registration of HAWK in standard characters in International Class 28 for boxing gloves and sports equipment for boxing and martial arts. The application is filed under Section 1(a) and claims a date of first use in commerce of January 1, 2016 and a date of first use anywhere of January 1, 1998,

dates that precede the first use the Board found for Plaintiff's predecessor and that HSI itself failed to establish. Moeed is represented in that application by the same counsel who appeared for HSI before the Board, and has instituted Opposition No. 91301440 against Plaintiff's predecessor's Application Serial No. 90144475. Serial No. 99303642 remains suspended. Upon information and belief, Moeed is or was employed by HSI. A true and correct copy of the record of that application is attached hereto as **Exhibit L**.

84. Four of the goods identified in Serial No. 88808929 are recited verbatim in the '692 Registration: "Hand wraps for sports use"; "Sports equipment for boxing and martial arts, namely, boxing gloves, mixed martial arts gloves, punching mitts, and shin guards"; "Weightlifting belts"; and "Karate shin pads."

85. Defendants received notice of each of the foregoing and at all relevant times knew that they had lost the opposition and were not entitled to the Inadvertent Registration.

86. Accordingly, from April 2, 2025 forward, Defendants have held no United States trademark registration of any kind. At the time Defendants enrolled the Affected ASINs in the Transparency Program in 2026, their only United States trademark filing was the pending, unregistered Application Serial No. 88808929, and Defendants knew that the sole registration they had ever held had been cancelled more than a year earlier.

**Defendants' First Interference with Amazon (March 2025)**

87. Notwithstanding their knowledge that the Inadvertent Registration had issued in error and would be cancelled, Defendants submitted one or more intellectual property infringement complaints to Amazon.com asserting the Inadvertent Registration against HAWK SPORTS-branded listings then operated by Plaintiff's predecessor in interest. That earlier

effort proceeded through Amazon's infringement complaint process rather than through the Transparency Program at issue here.

88. Amazon removed the listings that were the subject of those 2025 complaints from the United States marketplace. Those listings are distinct from the Affected ASINs at issue in this action.

89. Plaintiff's predecessor was required to correspond directly with Amazon's legal department, at substantial expense, to obtain reinstatement. Defendants' claims were refuted and Plaintiff's predecessor's listings were restored.

**Defendants' Second Interference with Amazon (2026)**

90. On or about August 19, 2026, Plaintiff discovered that twelve of its ASINs on the Amazon United States marketplace had been enrolled in Amazon's Transparency Program by a party Plaintiff had not authorized.

91. Plaintiff opened a case with Amazon regarding the unauthorized enrollment on August 19, 2026.

92. The Affected ASINs are: B088SR97T6, B07PVBRZS1, B07QL13QP9, B07PWMJT4Y, B07J3GRCCP, B07PWKHLH8, B07PWMKMX1, B07NKSMDSB, B07PVNT9BX, B087FJ8BNV, B07NNLBBKS, and B07NKSVG6L.

93. On August 28, 2026, Amazon Seller Support identified eleven of the Affected ASINs by number as enrolled in the Transparency Program, and advised Plaintiff that the enrollment could not be disabled "unless the brand requests to opt out." The twelfth, B07NKSVG6L, was not among the eleven ASINs Amazon identified as enrolled on August 28, September 2 and September 3, 2026. It appears in the affected-ASIN list recorded in the Transparency team's summary of Case No. 21791423021, which

reproduces the list Plaintiff supplied to Amazon on September 1, 2026. Plaintiff pleads its inclusion on the basis of its own records and Amazon's rejection of fifteen units of that ASIN during the week of August 17 through August 23, 2026.

94. A thirteenth ASIN, B07KL667P3, does not appear on the enrolled-ASIN list Amazon provided on August 28, 2026. Amazon has nonetheless rejected twenty-five of its units and restricted its inventory expressly for missing Transparency codes, by notifications dated September 2, September 4, and September 8, 2026, and has, at Plaintiff's request, added it to the ASINs under review in Case No. 21678702291, including in messages of September 5 and September 7, 2026. Plaintiff pleads the treatment of B07KL667P3 in the alternative, and excludes its units and the modeled losses attributable to it from the figures stated in this Complaint, pending clarification from Amazon as to whether it is enrolled or a second enrollment exists.

95. Each of the Affected ASINs is a listing for goods owned and sold by Plaintiff or its authorized sellers under the HAWK SPORTS mark covered by the '692 Registration.

96. Plaintiff raised the matter with Amazon. Amazon confirmed in writing that the brand Hawk Sports was enrolled "by the rights owner listed in the Brand Registry" — that is, by a party acting through Brand Registry, not through any error in Amazon's systems, and identified the enrolling party as the holder of the email address ali@hawk-sports.de.

97. The address ali@hawk-sports.de is on the domain hawk-sports.de. In Opposition No. 91267979, Defendant Raza testified on HSI's behalf that the HAWK business launched the websites www.hawk-sports.com and www.hawk-sports.de in 2017, and HSI relied upon those websites to support the rights it asserted there. Upon information and

belief, the address ali@hawk-sports.de is controlled by Defendant Raza and is used in the conduct of HSI's business.

98. On September 2, 2026, in Case No. 21839715151, an Amazon Transparency Account Manager confirmed in writing that "the brand Hawk Sports was enrolled into the Transparency program by the rights owner listed in the Brand Registry," that the rights owner "can be reached at ali@hawk-sports.de," and directed Plaintiff to obtain Transparency codes from that party.

99. On or about September 8, 2026, in Case No. 21791423021, Amazon's Transparency team recorded that the Transparency brand at issue is Transparency Brand ID 478199 (amzn1.tpncy.brand.DTJUVG2P), and that Plaintiff's Serial No. 88380071 is linked to a different Brand ID, 812411. The enrollment of the Affected ASINs is thus held under a brand record other than the one tied to Plaintiff's registration.

100. On September 10, 2026, in Case No. 21678702291, Amazon Brand Registry Support summarized Plaintiff's report as "a dispute over Transparency enrollment on ASINs you own," recorded the third rejected shipment, stated that "our Transparency team has identified the enrolling party as ali@hawk-sports.de," and submitted the matter as a brand ownership dispute.

101. On September 9, 2026, Amazon confirmed receipt of Plaintiff's registration certificate, the Board's decision, and Plaintiff's assignment records, and escalated the matter to its Transparency Brand Configuration team. Notwithstanding that notice, the enrollment remains in place.

102. Upon information and belief, Defendants effected the enrollment of the Affected ASINs by representing to Amazon, expressly or by necessary implication, that they owned or

were authorized to act under United States Trademark Application Serial No. 88380071 and Registration No. 7,998,692.

103. Each such representation was false. Defendants do not own Serial No. 88380071 or the ’692 Registration, have never owned them, and have never been authorized by Plaintiff or any of its predecessors to act under them.

104. Participation in the Transparency Program requires acceptance of a Transparency Program Agreement. A true and correct copy of the form of that agreement is filed as **Exhibit H**, under seal pursuant to Plaintiff’s concurrently filed Motion to File Exhibit H Under Seal. A redacted version, consisting of a cover page and the two pages of the agreement bearing the provisions quoted below, with all other text on those pages redacted and the remaining pages withheld, is filed in the public record. The agreement is the confidential commercial document of non-party Amazon.com Services LLC, and Plaintiff is contractually obligated to protect it from disclosure.

105. Section 3.1 of the Transparency Program Agreement requires the enrolling party to grant Amazon a non-exclusive, worldwide, perpetual, irrevocable and royalty-free license to reproduce, display, distribute, adapt and otherwise use Product Information, expressly including any trademarks or trade names included in that Product Information, on the Amazon Sites.

106. Section 5(b) of that agreement requires the enrolling party to represent and warrant that it has all requisite right, power, and authority to enter into the agreement and to grant the rights, licenses, and authorizations it contains.

107. Section 5(c) requires the enrolling party to represent and warrant that all information it provides or makes available to Amazon is at all times accurate and complete, and that Amazon's exercise of the license rights granted will not violate any third party's rights.

108. Section 5(d) requires the enrolling party to represent and warrant that none of the Product Information infringes upon any intellectual property right.

109. Upon information and belief, Defendants accepted a Transparency Program Agreement containing these or materially identical provisions, and thereby represented to Amazon that they possessed the authority to license to Amazon, worldwide and in perpetuity, the Product Information associated with the Affected ASINs, including the HAWK SPORTS mark and the product images, descriptions, and other content created by Plaintiff and its predecessors, and that Amazon's exercise of those licenses would violate no third party's rights and infringe no intellectual property right.

110. Each of those representations was false when made. Defendants held no right, power, or authority to license Plaintiff's registered mark or Plaintiff's product content to Amazon or to anyone else. Defendants have never sold a unit against any of the Affected ASINs.

111. Plaintiff asserts no claim for breach of the Transparency Program Agreement, to which Plaintiff is not a party and which disclaims third-party beneficiaries. Plaintiff pleads the foregoing representations as evidence of the falsity of Defendants' statements to Amazon and of the knowing, deliberate, and bad-faith character of Defendants' conduct.

112. Amazon relied upon Defendants' representations in granting Defendants Transparency control over the Affected ASINs.

113. As a direct and proximate result, Plaintiff's goods are blocked from entering the Amazon marketplace, Plaintiff's inbound shipment remains quarantined at an Amazon fulfillment

center, Plaintiff's saleable inventory is being depleted without possibility of replenishment, and Plaintiff has lost and continues to lose sales, Best Seller Rank, platform exposure, customer relationships, and goodwill across the Affected ASINs.

114. Plaintiff has demanded that Amazon suspend Defendants' Transparency control. Plaintiff opened its case with Amazon on August 19, 2026. More than five weeks later that matter remains unresolved, Amazon has given Plaintiff no date by which it will conclude, and Amazon has neither removed the enrollment nor released Plaintiff's quarantined shipments in the interim.

115. Amazon will not, as a matter of policy and practice, release a Transparency enrollment or reinstate a rights owner's control absent one of (a) a retraction from the enrolling party, (b) the conclusion of its own independent investigation, or (c) an order of a court of competent jurisdiction. Defendants have not retracted. Amazon's investigation has not concluded and is not subject to any timetable Plaintiff can rely upon. Only this Court can afford Plaintiff timely relief.

116. Defendants' conduct is ongoing. Absent injunctive relief, Defendants will continue to exclude Plaintiff from the sale of Plaintiff's own goods under Plaintiff's own federally registered mark.

117. Defendants' conduct has been and continues to be willful, deliberate, and in bad faith. Defendants enrolled a brand they do not own, individually selected twelve listings against which they have never sold, warranted to Amazon that they held rights they do not hold, incurred per-code fees to do so, and took each of these steps after a federal tribunal had refused their registration and found their evidence of prior United States use unworthy of belief. This is an exceptional case within the meaning of 15 U.S.C. § 1117(a).

118. Plaintiff has suffered and will continue to suffer irreparable harm for which there is no adequate remedy at law.

**FIRST CAUSE OF ACTION**
**FALSE DESIGNATION OF ORIGIN AND FALSE REPRESENTATION**
**(15 U.S.C. § 1125(a)(1)(A))**

119. Plaintiff incorporates and re-alleges all of the foregoing paragraphs as if fully set forth herein.

120. Defendants have used in commerce words, terms, names, symbols, and false designations of origin, and false and misleading representations of fact, which are likely to cause confusion, mistake, and deception as to the affiliation, connection, or association of Defendants with Plaintiff, and as to the origin, sponsorship, and approval of Plaintiff's goods.

121. Specifically, Defendants represented to Amazon.com that they were the brand owner of the goods sold under the Affected ASINs and that their enrollment of those ASINs infringed no other party's rights, and, in the alternative, that they owned or were authorized to act under Plaintiff's HAWK SPORTS application and registration. Defendants thereby held themselves out as the source, sponsor, or authorized rights holder of goods bearing Plaintiff's mark and manufactured and sold by Plaintiff.

122. Defendants' conduct occurred in interstate commerce and in connection with goods offered for sale on the largest online marketplace in the United States.

123. Defendants' conduct was undertaken with knowledge of Plaintiff's rights and with the intent to trade upon, appropriate, and exclude Plaintiff from those rights.

124. Plaintiff has been and will continue to be damaged, and is entitled to injunctive relief under 15 U.S.C. § 1116, to damages, Defendants' profits, and costs under 15 U.S.C. § 1117(a), and to enhanced damages and attorney fees.

## SECOND CAUSE OF ACTION
## FALSE OR MISLEADING REPRESENTATION OF FACT
## (15 U.S.C. § 1125(a)(1)(B))

125. Plaintiff incorporates and re-alleges all of the foregoing paragraphs as if fully set forth herein.

126. Defendants made false and misleading representations of fact in commercial communications concerning the nature, characteristics, and qualities of Plaintiff's and Defendants' goods and commercial activities, specifically by representing to Amazon.com that they were the brand owner of the goods sold under the Affected ASINs, that their enrollment infringed no other party's rights, and, in the alternative, that they held the trademark rights that in fact belong to Plaintiff.

127. Those representations were literally false, or in the alternative were misleading and actually deceived Amazon, as evidenced by Amazon's grant of Transparency control to Defendants.

128. The representations were material, in that they were the direct cause of Amazon's decision to encumber the Affected ASINs.

129. Plaintiff has been injured as a direct and proximate result, and is entitled to injunctive relief and damages under 15 U.S.C. §§ 1116 and 1117.

## THIRD CAUSE OF ACTION
## INFRINGEMENT OF FEDERALLY REGISTERED TRADEMARK
## (15 U.S.C. § 1114)

130. Plaintiff incorporates and re-alleges all of the foregoing paragraphs as if fully set forth herein.

131. Plaintiff is the owner of the ’692 Registration, which is valid, subsisting, and in full force and effect, and which constitutes prima facie evidence of the validity of the ’692 Mark, of Plaintiff’s ownership, and of Plaintiff’s exclusive right to use the mark in commerce on the goods identified therein. 15 U.S.C. § 1057(b).

132. Defendants have used in commerce, without Plaintiff’s consent, a reproduction, counterfeit, copy, or colorable imitation of the registered mark in connection with the sale, offering for sale, distribution, and advertising of goods, in a manner likely to cause confusion, mistake, or deception.

133. Defendants’ use includes their assertion of and trading upon the registered mark in the Amazon marketplace and their claim of brand owner status with respect to goods bearing the mark. Upon information and belief, Defendants have no listing of their own on the Amazon United States marketplace. Upon information and belief, Defendants continue to offer HAWK-branded sporting goods to United States consumers through the websites www.hawk-sports.com and www.hawk-sports.de.

134. Plaintiff is entitled to injunctive relief and to the remedies provided by 15 U.S.C. §§ 1116 and 1117.

## FOURTH CAUSE OF ACTION
## TORTIOUS INTERFERENCE WITH CONTRACT

135. Plaintiff incorporates and re-alleges all of the foregoing paragraphs as if fully set forth herein.

136. Plaintiff is party to a valid and existing contractual relationship with Amazon.com Services LLC pursuant to the Amazon Services Business Solutions Agreement, under which Plaintiff lists, fulfills, and sells goods on the Amazon United States marketplace.

137. Defendants had knowledge of that relationship. Defendants had previously caused the removal of Plaintiff's predecessor's Amazon listings, were refuted by Amazon following an investigation, and were aware that Plaintiff sells the goods covered by the '692 Registration through Amazon.

138. Defendants intentionally interfered with that relationship by submitting false representations of brand ownership, trademark ownership, and non-infringement to Amazon, thereby inducing Amazon to enroll the Affected ASINs in the Transparency Program under Defendants' control and to quarantine Plaintiff's inbound shipments.

139. Defendants' interference was accomplished by improper means, including misrepresentation, deceit, and violations of the Lanham Act.

140. Plaintiff has been damaged in an amount to be proven at trial.

141. Defendants' conduct was willful and malicious and manifests a knowing and reckless indifference toward, and disregard of, Plaintiff's rights. Plaintiff is therefore entitled to punitive damages pursuant to Utah Code Ann. § 78B-8-201.

**FIFTH CAUSE OF ACTION**
**TORTIOUS INTERFERENCE WITH PROSPECTIVE ECONOMIC RELATIONS**

142. Plaintiff incorporates and re-alleges all of the foregoing paragraphs as if fully set forth herein.

143. Under Utah law, a claim for intentional interference with prospective economic relations requires that the defendant intentionally interfered with the plaintiff's existing or

potential economic relations by improper means, causing injury to the plaintiff. *Eldridge v. Johndrow*, 2015 UT 21, ¶ 70, 345 P.3d 553.

144. Plaintiff had existing and prospective economic relations with Amazon and with the consumers who purchase Plaintiff's goods through the Affected ASINs.

145. Defendants intentionally interfered with those relations through improper means, namely knowing misrepresentations to Amazon that Defendants were the brand owner of goods they have never sold, that their enrollment infringed no other party's rights, and, in the alternative, that they held rights under Plaintiff's federal trademark registration.

146. Plaintiff has suffered injury as a direct and proximate result, in an amount to be proven at trial.

147. Defendants' conduct was willful and malicious and manifests a knowing and reckless indifference toward, and disregard of, Plaintiff's rights. Plaintiff is therefore entitled to punitive damages pursuant to Utah Code Ann. § 78B-8-201.

**SIXTH CAUSE OF ACTION**
**DECLARATORY JUDGMENT**
**(28 U.S.C. §§ 2201–2202)**

148. Plaintiff incorporates and re-alleges all of the foregoing paragraphs as if fully set forth herein.

149. An actual, substantial, and continuing justiciable controversy exists between Plaintiff and Defendants concerning the ownership of and right to use the HAWK SPORTS and HAWK marks in United States commerce in International Class 28, arising from Defendants' assertion of rights in those marks to Amazon on two separate occasions and their continuing encumbrance of the Affected ASINs.

150. In Opposition No. 91267979 the Board determined, after a full trial on the merits, that Plaintiff's predecessor Ortid LLC held priority of use of HAWK in the United States, on the basis of Ortid's first United States sale of HAWK-branded boxing gloves on February 16, 2017, and that HSI had established no use of its mark in the United States before that date. Those determinations were actually litigated and were necessary to the Board's judgment, and they are entitled to preclusive effect against Defendants in this Court. *See B&B Hardware, Inc. v. Hargis Industries, Inc.*, 575 U.S. 138, 160 (2015).

151. That determination rested upon Ortid's common law use of HAWK in United States commerce, which Plaintiff holds by assignment together with the associated goodwill, and does not depend upon the record ownership of any particular pending application.

152. Defendant Raza is bound by that determination notwithstanding that he was not named as a party, because he controlled HSI's participation in that proceeding, personally submitted the testimony on which HSI's priority case rested, and is in privity with HSI. *See Taylor v. Sturgell*, 553 U.S. 880, 893–95 (2008).

153. Independently of that preclusive determination, any use of HAWK or HAWK SPORTS by Defendants in the United States began after the use of Plaintiff's predecessor, is junior to it, and is likely to cause confusion with it, and confers upon Defendants no right enforceable against Plaintiff.

154. Plaintiff is entitled to a declaration that: (a) Plaintiff is the owner of the '692 Registration and of rights in the HAWK SPORTS and HAWK marks in the United States in International Class 28 senior to any rights of Defendants; (b) Defendants own no United States trademark rights in HAWK or HAWK SPORTS; (c) Plaintiff's use of the HAWK SPORTS mark does not infringe any right of Defendants; and (d) Defendants have no

right to assert any claim of trademark ownership or authorization with respect to Plaintiff's marks, products, or ASINs to Amazon or to any other online marketplace.

**PRAYER FOR RELIEF**

WHEREFORE, Plaintiff prays for judgment against Defendants, and each of them, as follows:

155. That the Court issue a temporary restraining order and preliminary and permanent injunctions requiring Defendants to immediately withdraw the Transparency enrollment of the Affected ASINs and any Brand Registry claim, rights owner designation, or intellectual property complaint premised upon Serial No. 88380071, Serial No. 88808929, Serial No. 99303642, Registration No. 7,998,692, or Defendants' claimed ownership of the Affected ASINs, and to transmit written notice of that withdrawal to Amazon;

156. That Defendants, and all persons in active concert or participation with them who receive actual notice of the order, be enjoined during the pendency of this action and permanently from submitting to Amazon.com or to any other online marketplace any enrollment in a brand-protection or item-tracing program, and any brand registry claim, rights owner designation, or intellectual property complaint, that is directed at any listing offering goods sold by Plaintiff or that asserts ownership of, authorization under, or rights in the HAWK SPORTS or HAWK marks as used by Plaintiff in International Class 28, the '692 Registration, Serial No. 88380071, Serial No. 88808929, Serial No. 99303642, or the Affected ASINs;

157. That, pursuant to the All Writs Act, 28 U.S.C. § 1651, and Fed. R. Civ. P. 65(d)(2)(C), Amazon.com, Inc. and Amazon.com Services LLC be directed to remove the Transparency enrollment imposed upon the Affected ASINs through Defendants'

enrollment, to restore Plaintiff's rights owner control of the Affected ASINs together with their existing customer reviews and ratings, and to release Plaintiff's quarantined inbound shipments, to permit Plaintiff to replenish inventory against the Affected ASINs, and to refrain during the pendency of this action from implementing any new Transparency enrollment or brand owner designation affecting the Affected ASINs premised upon Serial No. 88380071, Serial No. 88808929, Serial No. 99303642, or Registration No. 7,998,692;

158. For a declaration of the rights of the parties as set forth in the Sixth Cause of Action;

159. For Plaintiff's actual damages, Defendants' profits, and the costs of this action pursuant to 15 U.S.C. § 1117(a);

160. That the Court find this to be an exceptional case and award Plaintiff its reasonable attorney fees pursuant to 15 U.S.C. § 1117(a);

161. For enhanced damages under 15 U.S.C. § 1117(a), and for punitive damages on Plaintiff's state law claims pursuant to Utah Code Ann. § 78B-8-201;

162. For pre-judgment and post-judgment interest; and

163. For such other and further relief as the Court deems just and proper.

**JURY DEMAND**

Plaintiff hereby demands a trial by jury on all issues so triable pursuant to Fed. R. Civ. P. 38(b).

DATED AND SIGNED this 28th day of September, 2026.

/s/ Steven L. Rinehart
STEVEN L. RINEHART
*Attorney for Plaintiff*