IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF UTAH

| | |
|---|---|
| UNIVERA BRANDS, LLC, a Delaware limited liability company,<br><br>Plaintiff,<br><br>v.<br><br>HAWK SPORTS INDUSTRIES, GERMANY, GmbH, a German limited liability company; and ALI RAZA, an individual,<br><br>Defendants. | MEMORANDUM DECISION AND ORDER GRANTING PLAINTIFF'S MOTION FOR ALTERNATIVE SERVICE<br><br>Case No. 2:26-cv-00903-HCN<br><br>District Judge Howard C. Nielson, Jr.<br>Magistrate Judge Paul Kohler |

This matter is before the Court on Plaintiff's Motion for Alternative Service ("Motion").[1] For the reasons discussed below, the Court will grant Plaintiffs' Motion.

## I. BACKGROUND

Plaintiff filed this action on September 28, 2026, asserting violations of Lanham Act and tortious interference with contract and prospective economic relations.[2] Defendants are alleged to have held themselves out as the owners of a trademark to obtain unique Amazon product identification numbers ("ASINs") assigned to individual product listings for products manufactured to Plaintiff's specifications and intended to be packaged and sold by Plaintiff. [3] Obtaining an ASIN allows for products under that listing to be labeled with a transparency code

[1] Docket No. 3, filed September 28, 2026.

[2] Docket No. 1.

[3] *Id.* ¶¶ 14, 26, 27, 32.

that is then used in an effort to "protect a rights holder's own goods against counterfeits."[4] Defendants' actions have resulted in Plaintiff being unable to ship its own goods bearing its registered mark on the Amazon marketplace unless it obtains the transparency codes of which Defendants have taken ownership, effectively barring Plaintiff from moving its products in its regular course of business with Amazon and consumers.[5]

Plaintiff concurrently filed an Emergency Motion for Temporary Restraining Order[6] and the current Motion requesting that Plaintiff be permitted to serve the Summons, Complaint and the Emergency Motion on Defendants via email to Defendants' attorney of record before the U.S. Patent and Trademark Office ("USPTO"), email to Defendants at their email connected to their dealings with Amazon, email to an attorney who appeared for Defendant Hawk Sports in another trademark matter, and by international courier to Defendant Hawk Sports at the German address.[7] In its Motion, Plaintiff asserts that due to the time-sensitive nature of the facts and circumstances in the underlying Emergency Motion, alternative service is necessary.

## II. DISCUSSION

Satisfactory service of process is a prerequisite to jurisdiction.[8] Federal Rule of Civil Procedure 4 governs that service of process. Because Defendants are an entity and an individual

---

[4] *Id.* ¶ 51.

[5] *Id.* ¶ 38, 40–47.

[6] Docket No. 2.

[7] Docket No. 3. Plaintiff has apparently already sent the Complaint, and a pending Emergency Motion for Temporary Restraining Order and Preliminary Injunction to Defendants at ali@hawk-sports.de, Defendant's U.S. trademark counsel's email, to the counsel who appeared for Defendant in another dispute, and to Amazon's legal department. *See* Docket No. 2, at 2.

[8] *Hukill v. Okla. Native. Am. Domestic Violence Coal.*, 542 F.3d 794, 797 (10th Cir. 2008).

who have foreign citizenship, Rules 4(h) and 4(f) govern. Rule 4(h) requires that service on a foreign entity that is not within any judicial district of the United States to comply with Rule 4(f). As to foreign corporations and individuals, Rule 4(f) permits foreign defendants to be served:

> (1) by any internationally agreed means of service that is reasonably calculated to give notice, such as those authorized by the Hague Convention on the Service Abroad of Judicial and Extrajudicial Documents;
> (2) if there is no internationally agreed means, or if an international agreement allows but does not specify other means, by a method that is reasonably calculated to give notice . . .
> (3) or by other means not prohibited by international agreement, as the court orders.

"Courts interpreting Rule 4(f) have concluded it does not create a hierarchy of preferred methods of service, and parties are not required to comply with Rule 4(f)(1) or (2) before seeking service under Rule 4(f)(3)."[9] So long as the method of service (1) "comport[s] with constitutional notions of due process" and (2) is not "prohibited by international agreement," it is permissible.[10] The Supreme Court has determined that "due process requires service of process that is 'reasonably calculated, under all the circumstances, to apprise interested parties of the pendency of the action and afford them an opportunity to present their objections.'"[11] "Ultimately, and in compliance with international agreement, the decision to order service of process under Rule 4(f)(3) is committed to the sound discretion of the district court."[12]

---

[9] *Love-Less Ash Co., Inc. v. Asia Pac. Constr., LLC*, No. 2:18-cv-00595-CW-DAO, 2021 WL 3679971, at *2 (D. Utah Aug. 19, 2021) (citing *Rio Props., Inc. v. Rio Int'l Interlink*, 284 F.3d 1007, 1015 (9th Cir. 2002), and collecting cases).

[10] *Inception Mining, Inc. v. Mother Lode Mining, Inc.*, No. 2:24-00171-CMR, 2024 WL 4696749, at *2 (D. Utah Nov. 6, 2024) (quoting *Rio Props.*, 284 F.3d at 1015).

[11] *Id.* (quoting *Mullane v. Cent. Hanover Bank & Tr. Co.*, 339 U.S. 306, 314 (1950)).

[12] *Heidicker v. Wasabi Ent., et al.*, No. 2:24-cv-00713-CMR, 2025 WL 1114205, at *2 (D. Utah Apr. 15, 2025) (internal quotation marks and citation omitted).

With the interplay of the rules in mind, the Court addresses Plaintiff's requested alternatives for service. Defendants' location in Germany implicates the Hague Convention on the Service Abroad of Judicial and Extrajudicial Documents ("Hague Convention").[13] Germany is a signatory to the Hague Convention and has objected to Article 10 of the Hague Convention, requiring instead that requests for service go through a central authority.[14] Plaintiff alleges that effecting service through the German Central Authority's requirements "will take months," time Plaintiff alleges it does not have.[15]

*a. Email Service to Mr. Shamayev and Mr. Gottesman*

The Tenth Circuit has affirmed a district court's decision to permit a plaintiff to serve a foreign defendant's U.S. counsel when a foreign signatory to the Hague Convention objects to Article 10 of the Hague Convention.[16] The Tenth Circuit noted that "[s]everal tribunals have held—Article 10 objections notwithstanding—that the Convention does not contain a specific

---

[13] *See Convention Done at the Hague Nov. 15, 1965*, T.I.A.S. No. 6638 (Feb. 10, 1969) ("The present Convention shall apply in all cases, in civil or commercial matters, where there is occasion to transmit a judicial or extrajudicial document for service abroad.").

[14] The Hague Conference on Private International Law, Germany, DECLARATION/RESERVATION/NOTIFICATION, German Declarations, https://www.hcch.net/en/instruments/conventions/status-table/notifications/?csid=402&disp=resdn, [https://perma.cc/8PMU-SRVC] ("Germany objects to the use of methods of transmission to Articles 8 and 10. . . . Service pursuant to Article 10 of the Convention shall not be effected.").

[15] Docket No. 3, at 3. *See also* Docket No. 3-1, ¶ 12 ("[B]ased on the information published by the Hague Conference on Private International Law concerning the operation of the German Central Authority, such service takes several months from transmission to the return of a certificate of service.").

[16] *Compañia de Inversiones Mercantiles, S.A. v. Grupo Cementos de Chihuahua S.A.B. de C.V.*, 970 F.3d 1269, 1294–95 (10th Cir. 2020).

prohibition on this form of service."[17] The Tenth Circuit further noted that "courts have held that the proper construction of Rule 4(f)(3) vis-à-vis a foreign defendant includes services via delivery to the defendant's attorney."[18]

"To satisfy due process requirements for alternative service via counsel, the court requires sufficient information concerning the individual's relationship with his/her counsel which demonstrates adequate communication between the individual and the attorney."[19] In this district and others in the Tenth Circuit, courts have permitted service upon U.S. based defense counsel active in representing their foreign clients.[20] Here, Plaintiff wishes to serve Stanislav A. Shamayev, U. S. based counsel of record for Defendants in another matter before the USPTO.[21] Plaintiff asserts that Mr. Shamayev prosecutes the "live application—the very application on which, as the Complaint alleges, Defendants obtained the Amazon Brand Registry status they used to enroll Plaintiff's listings."[22] Plaintiff further asserts that Mr. Shamayev's emails on record with the U.S. Patent Office are "designated as authorized for correspondence,"[23] such that the natural inference

---

[17] *Id.* (collecting cases).

[18] *Id.* at 1295 (collecting cases) (internal quotation marks omitted).

[19] *IFIT Inc. v. FIIT Ltd.*, No. 1:23-cv-00077-JNP-CMR, 2024 WL 3028410, at *2 (D. Utah June 17, 2024) (internal quotation marks, citations, and alterations omitted).

[20] *Id.* at *2–3 (permitting service on defendants via defense counsel when parties were involved with another separate proceeding and had been in communication with each other) (collecting cases); *Beijing QIYI Century Sci. & Tech. Co., Ltd. v. Shenzhen QiYi Innovations Tech. Co., Ltd.*, No. 18-cv-02360-RM-STV, 2018 WL 6589806, at *3–4 (D. Colo. Dec. 13, 2018) (permitting service on defense counsel where defense counsel was "actively involved in" another case and therefore was "seemingly in contact with" the defendant) (collecting cases).

[21] Docket No. 3, at 3.

[22] *Id.* at 5–6.

[23] *Id.* at 2–3.

is that Mr. Shamayev is in regular contact with the Defendants and will convey the required papers to them sufficient for the requested "primary method" of service upon Defendants.[24] For similar reasons, Plaintiff also wishes to send papers onto Mr. Baruch S. Gottesman, who appeared and litigated a case before the Trademark Trial and Appeal Board ("TTAB") on behalf of Defendants.[25]

The Court is less convinced of the current nature of the communication between Defendants and Mr. Shamayev and of the certainty that Defendants will be made aware of the current case through Mr. Shamayev. According to the records in the USPTO,[26] nothing meaningful has been done on the case since June 2026, and that entry was a notification that a notification of non-final action was emailed.[27] Prior to that notice going out, the USPTO had issued a letter of suspension in October 2020, and other entries in the prosecution history indicate a "suspension check" on the case up until an entry "suspension checked – to attorney for action" was noted in May 2026.[28] The following month, the non-final action was emailed, with no action from Mr. Shamayev following.[29] The Court claims no expertise in deciphering what has been substantively going on in the case; but based on this activity and timeline, the Court is not sufficiently convinced

---

[24] *Id.* at 3.

[25] *Id.* at 2; Exhibit E, Docket No. 1-6 (Opinion from the TTAB mailed on August 2024).

[26] *See* Exhibit J, Docket No. 1-11. The Court also completed its own search at the official USPTO website, https://www.uspto.gov/trademark, on September 30, 2026, searching United States Trademark Application Serial No. 88808929. Judicial notice of this record is proper, because the record "can be accurately and readily determined from sources whose accuracy cannot reasonably be questioned." *See* Fed. R. Evid. 201(b)(2).

[27] *See* USPTO Trademark Search: "United States Trademark Application Serial No. 88808929," http://tsdr.uspto.gov/#caseNumber=88808929&caseSearchType=US_APPLICATION&caseType=DEFAULT&searchType=statusSearch, [https://perma.cc/KK2N-YTLL].

[28] *Id.*

[29] *Id.*

of the actual and active engagement of Mr. Shamayev with the USPTO to conclude that serving Mr. Shamayev in this case will meet the requisite due process requirements. Likewise, it is unclear how much communication Mr. Gottesman has had with Defendants since the TTAB opinion was mailed in 2024.[30]

For these reasons, while the Court will allow Plaintiff to serve the required papers to Mr. Shamayev and Mr. Gottesman via the emails that Plaintiff has provided, the Court will require more.

*b. Email Service to Defendants Directly*

Plaintiff requests permission to serve Defendants via the email address "from which the conduct at issue was undertaken," noting that Amazon has identified the email address to Plaintiff in writing, indicating that "[t]he rights owner for this brand can be reached at ali@haw-sports.de."[31] Plaintiff correctly notes that the Tenth Circuit has not directly addressed the question of whether service by email to a foreign defendant who has objected to Article 10 is permissible.[32] Plaintiff also correctly highlights that this district has held that an objection to Article 10 does not prohibit email service under Rule 4(f)(3).[33] In sum, where the circumstances suggest that email is reasonably calculated to provide a party with notice of an action and an opportunity to respond,

---

[30] *See* Exhibit E, Docket No. 1-6, at 1.

[31] *See* Exhibit 2, Docket No. 2-2, Declaration of Beka Nelson, ¶ 25.

[32] *See Compañia de Inversiones Mercantiles,* 970 F.3d at 1295 n.5 (saving the topic of whether an "Objection to Article 10 of the Hague Service convention prohibits service by email" for "another day").

[33] Docket No. 3, at 7. *See also ThermoWorks, Inc. v. Typhur Inc.*, No. 2:25-cv-00416-AMA-CMR, 2026 WL 594718, at *2 (D. Utah Mar. 3, 2026) (collecting cases).

and an international agreement does not prohibit the use of email, this district has deemed email service permissible and comports with Rule 4(f)(3).[34]

Based upon the evidence before the Court, it appears that service by email to Defendant at the email with which Defendants has been corresponding with Amazon related to the underlying issue is reasonably calculated to provide Defendants with the appropriate notice and will allow Defendants to respond.[35] And, given the time-sensitive nature of the pending Emergency Motion, "[e]mail service would thus promptly notify [Defendants] of the pending action."[36]

*c. Courier Service to Known German Address*

Plaintiff encourages this Court to direct these "several methods together" by email to both Defendants' counsel, direct email to Defendants, and then mentions courier delivery to Kiel at the address listed by Defendants on the USPTO website.[37] The Court declines to permit Plaintiff to serve the papers through courier service, noting that "service of documents by international courier constitutes service through 'postal channels,' and accordingly this method of service is insufficient" in light of Germany's objection to Article 10.[38]

---

[34] *See ThermoWorks, Inc.*, 2026 WL 594718, at *2.

[35] *Id.* at *3 (concluding that email service on a defendant who had provided Amazon with its email address "is likely to provide notice to" defendant because, "as an online seller" it was therefore "reasonable to find that it likely relies on electronic communications to interact with" others).

[36] *Id.*

[37] Docket No. 3, at 8.

[38] *AMTO, LLC v. Bedford Asset Mgmt., LLC*, 3457452, at *10 (S.D.N.Y. June 1, 2015).

III. CONCLUSION

Having considered Plaintiff's Motion, and for good cause appearing, it is therefore ORDERED:

(A) Plaintiff's Motion for Alternative Service (Docket No. 3) is GRANTED.

(B) Plaintiff may effect service of its Complaint and Emergency Motion for Temporary Restraining Order and Preliminary Injunction upon on the foreign Defendants by sending the Summons, Complaint, and Emergency Order to Mr. Shamayev email addresses (uspto@unitedlegalexperts.com, sshamayev@shamayevlaw.com, and tradamarks@unitedlegalexperts.com) with a "request read receipt" and "request delivery receipt" function applied, three times per week for two consecutive weeks, not more often than once every other day (unless a written response is received from the respective counsel acknowledging receipt).

(C) Plaintiff may effect service of its Complaint and Emergency Motion for Temporary Restraining Order and Preliminary Injunction upon on the foreign Defendants by sending the Summons, Complaint, and Emergency Order to Mr. Gottesman's email address (baruch.gottesman@gmail.com) with a "request read receipt" and "request delivery receipt" function applied, three times per week for two consecutive weeks, not more often than once every other day (unless a written response is received from the respective counsel acknowledging receipt).

(D) Plaintiff may effect service of its Complaint on the foreign Defendants by sending the Summons and Complaint to ali@hawk-sports.de with a "request read receipt" and "request delivery receipt" function applied, three times per week for two consecutive weeks, not

more often than once every other day (unless a written response is received from the Defendants acknowledging receipt).

(E) Plaintiff must also include a copy of this signed Order Granting Plaintiff's Motion as to the Defendants with the Summons, Complaint, and Emergency Motion in each email to both of Defendants' counsel and to Defendant.

(F) Service of the Summons, Complaint, and Emergency Motion as to the Defendants will be complete once Plaintiff receives confirmation that the Summons, Complaint, and Emergency Motion have been sent to and received by both of Defendants' counsel and received by Defendants at the email listed above.

(G) Plaintiff is required to file a declaration or proof of service once service on Defendants' Counsel and Defendants is complete.

IT IS SO ORDERED.

DATED this 2nd day of October 2026.

BY THE COURT:

PAUL KOHLER
United States Magistrate Judge